UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
Miami Division

Case Number: 20-60348-CIV-MORENO

ADOLFO KARR, IAN KARR, LILIANA
COHEN, LUIS FERNANDO ESCOBAR,
PIEDAD DEL CARMEN MARULANDA,
VALDIRENE VASQUEZ *a/k/a* VALDIRENE
MOEIRA DA SILVA, ZACHARY VASQUEZ,
MARIA REYES, and MICHAEL LYN,

        Petitioners,

vs.

MICHAEL W. MEADE, Field Office Director,
Miami Field Office, U.S. Immigration and
Customs Enforcement, *et. al.*,

        Respondents.
_____/

## ORDER OF DISMISSAL FOR LACK OF JURISDICTION

THIS CAUSE came before the Court upon the Petitioners' Motion for a Preliminary Injunction **(D.E. 17)** and the Respondents' Motion to Dismiss **(D.E. 24)**.

Alien petitioners, along with their United States citizen relatives, seek an injunction of their valid orders of removal from the United States pending their provisional waiver application process. The Court does not envy Congress' task in balancing the interests of the United States in how to welcome to different degrees in its history millions of immigrants, who have contributed so much to its success as a nation. What is clear is that Congress has deprived the federal courts of jurisdiction to decide who has a legal right to remain in the United States during the pendency of the aliens' provisional waiver applications. Therefore, the request for an injunction is denied and the case is dismissed.

# I. BACKGROUND

Petitioners Adolfo Karr, Liliana Cohen, Luis Fernando Escobar, Valdirene Vasquez, and Maria Reyes are subject to outstanding orders of removal from the United States. The legal validity of the removal orders is not in dispute. (*See* D.E. 17 at 26.) The remaining Petitioners (Ian Karr, Piedad del Carmen Marulanda, Zachary Vasquez, and Michael Lyn) are United States citizen relatives of Karr, Cohen, Escobar, Vasquez, and Reyes, who each began the "provisional waiver process" for their alien relative by filing a Form I-130 Petition for Alien Relative.

After outlining the provisional waiver application process, the Court will summarize the relevant factual backgrounds for Karr, Cohen, Escobar, Vasquez, and Reyes. The factual allegations, which are taken from the Petition for Writ of *Habeas Corpus* and Class Action Complaint, are accepted as true.

## A. THE "PROVISIONAL WAIVER PROCESS"

The provisional waiver process allows certain immigrant visa applicants who are relatives of United States citizens or lawful permanent residents to request a provisional waiver of the unlawful presence grounds of inadmissibility under the Immigration and Nationality Act. The regulations governing provisional unlawful presence waivers of inadmissibility are established in 8 C.F.R. Section 212.7(e).

An alien who has been ordered removed from the United States can get a provisional waiver if the alien: (1) applies for and obtains the approval of an immigrant visa petition (Form I-130 or Form I-140); (2) applies for and is granted permission to reapply for admission into the United States after deportation or removal (Form I-212); (3) applies for and is granted a provisional unlawful presence waiver (Form I-601A); and (4) leaves the United States for consular processing abroad. *See* 8 C.F.R. § 212.7(e) (effective Aug. 29, 2016); *See also* Expansion of Provisional Unlawful Presence Waivers of Inadmissibility, 81 Fed. Reg. 50244, 2016 WL 4037178 (July 29,

2016) (codified at 8 C.F.R. §§ 103, 212).

For background, prior to 2013, "aliens undergoing consular processing of their immediate relative visas [could not] apply for an unlawful presence waiver until the consular officer determine[d] that they [were] inadmissible during their immigrant visa interviews." *See* Provisional Unlawful Presence Waivers of Inadmissibility for Certain Immediate Relatives, 78 Fed. Reg. 536, 565, 2013 WL 24532 (Jan. 3, 2013). Under that process, the "unlawful presence waiver process require[d] these immediate relatives to remain abroad until [United States Citizenship and Immigration Services] adjudicate[d] the waiver." *Id.* Because the lengthy processing times could take over a year, United States citizens could have been "separated from their immediate relative family members for prolonged periods resulting in financial, emotional, and humanitarian hardships." *Id.*

Beginning in 2013, the Department of Homeland Security issued a new Final Rule that would "permit certain immediate relatives to apply for a provisional unlawful presence waiver prior to departing from the United States." *Id.* Thus, the new Final Rule allowed certain applicants to "get in line" for the waiver while remaining with their families in the United States. *Id.* The new Final Rule did not, however, "[c]onfer any legal status . . . or protect an alien from being placed in removal proceedings or removed from the United States in accordance with current [Department of Homeland Security] policies governing initiation of removal proceedings and the use of prosecutorial discretion." *Id.* at 536. As codified, Section 212.7(e)(2)(i) clearly provided that "the decision whether to approve a provisional unlawful presence waiver application [was] discretionary and [did] not constitute a grant of a lawful immigration status or a period of stay authorized by the Secretary." *See* 8 C.F.R. § 212.7(e)(2)(i) (effective Mar. 4, 2013).

In 2016, the Department of Homeland Security amended Section 212.7(e) to allow individuals with final orders of removal, exclusion, or deportation to be eligible for provisional

waivers if they applied for, and United States Citizenship and Immigration Services approved, a Form I-212 Application for Permission to Reapply for Admission into the United States After Deportation or Removal. *See* Expansion of Provisional Unlawful Presence Waivers of Inadmissibility, 81 Fed. Reg. at 50245, 2016 WL 4037178 (codified at 8 C.F.R. § 212.7(e)(4)(iv)). After the amendment, the rule still clearly provides that "the decision whether to approve a provisional unlawful presence waiver application is discretionary. A pending or approved provisional unlawful presence waiver does not constitute a grant of a lawful immigration status or a period of stay authorized by the Secretary." *See* § 212.7(e)(2)(i) (effective Aug. 29 2016).

### B. ADOLFO KARR AND LILIANA COHEN

Petitioners Adolfo Karr and Liliana Cohen are natives and citizens of Peru. (D.E. 1 at ¶ 42.) They entered the United States on April 10, 1996 when they were admitted on valid B1/B2 visas. *Id.* at ¶ 43. Although they were only authorized to stay until October 9, 1996, Karr and Cohen "overstayed their authorized stay in the United States." *Id.* at ¶¶ 43–44.

#### 1. Initial Order of Removal

On January 29, 2009, more than 12 years after their authorized stay expired, the Department of Homeland Security initiated removal proceedings against Karr and Cohen by issuing them both a Notice to Appear and charging them as removable from the United States for having remained longer than permitted. *Id.* at ¶ 46. On November 6, 2009, the Miami Immigration Court denied Karr's and Cohen's application for cancellation of removal and ordered them removed to Peru. *Id.* at ¶ 47. Karr and Cohen appealed this decision to the Board of Immigration Appeals, which dismissed the appeal on June 24, 2010, making their orders of removal administratively final. *Id.* at ¶¶ 48–49. Karr and Cohen did not appeal this dismissal to the Eleventh Circuit. (*See* D.E. 24 at 2.)

On October 23, 2014, United States Immigration and Customs Enforcement ("ICE")

approved Karr's Form I-246 Application for Stay of Deportation or Removal, which stayed Karr's removal for one year. (D.E. 1 at ¶ 51.) ICE then enrolled Karr into an Order of Supervision Program, which required him to periodically report to ICE and granted him work authorization in the United States. *Id.* Cohen was enrolled in the same program on July 17, 2013. *Id.* at ¶ 50.

On July 4, 2019, Karr and Cohen filed a Motion to Reopen with the Board of Immigration Appeals, asking the Board to reopen removal proceedings so they could file a Form I-485 Application to Adjust Status to Lawful Permanent Resident. *Id.* at ¶ 53. On November 26, 2019, the Board of Immigration Appeals denied the Motion to Reopen. *Id.* at ¶ 54. Karr and Cohen did not appeal this denial to the Eleventh Circuit. (*See* D.E. 24 at 2.)

### 2. Provisional Waiver Process

The provisional waiver process for Karr and Cohen was initiated by their United States citizen son, Ian Karr. (D.E. 1 at ¶¶ 45, 56–58.) In June and July of 2018, Ian Karr submitted Form I-130 Petitions for Alien Relative to United States Citizenship and Immigration Services for his mother and father. *Id.* at ¶¶ 56–57. The I-130 Petitions for Karr and Cohen were approved in May and June of 2019, respectively. *Id.* at ¶¶ 59–60.

On January 16, 2020, Karr submitted his Form I-824 Application for Action on Approved Petition or Application to United States Citizenship and Immigration Services, which has the effect of sending the approved I-130 Petition to the National Visa Center so that Karr can pay the required fees and pursue his immigrant visa at the U.S. Consulate in Peru. *Id.* at ¶ 61.

On February 5, 2020, Karr and Cohen submitted their Form I-212 Applications for Permission to Reapply for Admission into the United States. *Id.* at ¶ 62. To date, a notice of receipt has only been issued for Karr's application. *Id.* & n.1.

Karr is pursuing the provisional waiver process to legalize his status in the United States prior to pursuing his immediate relative immigrant visa at the U.S. Consulate in Peru. *Id.* at ¶ 63.

After paying the National Visa Center fees and his Form I-212 Application being approved, Karr asserts he will submit his Form I-601A Application for Provisional Unlawful Presence Waiver. *Id.* Upon Karr's return to the United States as a lawful permanent resident, Cohen will submit her I-601A. *Id.* at ¶ 64.

### 3. **Scheduled Removal**

In October 2017, Karr submitted another Form I-246 Application for Stay of Deportation, which was denied in September 2018. *Id.* at ¶ 65. Cohen filed the same application in September 2018, and it was denied in January 18, 2019. *Id.* at ¶ 66. Then, on September 24, 2019, Karr and Cohen reported to their scheduled appointment as part of the Order of Supervision Program, at which time ICE issued a "Plan of Action for Removal" that required Karr and Cohen to depart the United States no later than March 7, 2020. *Id.* at ¶¶ 67–68. During the appointment, ICE informed Karr and Cohen that they would be classified as fugitives subject to detention and forced removal from the United States if they failed to voluntarily depart the United States on or before March 7, 2020. *Id.* at ¶ 68.

The Plan of Action also required Karr and Cohen to report to ICE on February 7, 2020 to show plane tickets confirming their departure from the United States. *Id.* at ¶ 69. During this appointment, ICE confirmed with Karr and Cohen that they must depart the United States notwithstanding their pending applications in the provisional waiver process. *Id.*

On March 3, 2020, the Court entered an order setting a hearing[1] and temporarily enjoining enforcement of the removal orders for Karr and Cohen until March 30, 2020. (D.E. 20.)

---

[1] On the Friday afternoon before the hearing set for the following Monday morning—which, for the convenience of the parties, was converted to a telephonic hearing to accommodate the parties in view of the ongoing coronavirus health crisis (D.E. 27)—the parties filed a joint motion to continue the hearing by two weeks and to extend the temporary injunction (D.E. 30). The Court denied that motion as it would enter this written ruling before the hearing. (D.E. 31.)

### C. LUIS FERNANDO ESCOBAR

Petitioner Luis Fernando Escobar is a native and citizen of Colombia. (D.E. 1 at ¶ 71.) He entered the United States, without inspection, around 1996. *Id.* at ¶ 75. In 2009, Escobar was arrested in Collier County, Florida and charged with petit theft. *Id.* at ¶ 76. After receiving a withhold of adjudication, ICE detained him and instituted removal proceedings. *Id.*

#### 1. Initial Order of Removal

Escobar was initially detained in Miami, Florida, but ultimately transferred to a detention center in Harlingen, Texas. *Id.* at ¶ 77. After receiving immigration bond, Escobar attended two master calendar hearings at Harlingen Immigration Court. *Id.* at ¶ 78. Escobar then retained separate counsel to change the venue of his immigration proceedings to Miami. *Id.* at ¶ 79. Although Escobar's then-retained counsel advised him in advance that she could not continue his case, Escobar failed to appear for his individual hearing due to "unforeseen circumstances." *Id.* When Escobar did not appear, the Harlingen Immigration Court ordered Escobar removed from the United States *in absentia*. *Id.* at ¶ 80. Escobar appealed to the Board of Immigration Appeals, which dismissed his appeal on May 22, 2012. *Id.* at ¶ 81. It is not clear from the record whether Escobar appealed this decision to the United States Court of Appeals for the Fifth Circuit.

#### 2. Provisional Waiver Process

The provisional waiver process for Escobar was first initiated in 2015 by his United States citizen wife, Piedad del Carmen Marulanda, who submitted an I-130 Petition for Alien Relative to obtain an immigrant visa for her husband. *Id.* at ¶ 82. United States Citizenship and Immigration Services eventually approved the I-130 Petition and forwarded it to the National Visa Center. *Id.* But after Escobar did not act on the approved I-130 Petition within two years, his visa case lapsed on August 29, 2018. *Id.* at ¶ 84. The National Visa Center subsequently issued a Final Notice of Termination of Registration. *Id.*

In 2018, Escobar filed a motion to reopen removal proceedings with the Board of Immigration Appeals so that he could file an application for adjustment of status. *Id.* at ¶ 83. On December 20, 2018, the Board of Immigration Appeals denied the motion. *Id.* Escobar then filed a petition for review with the United States Court of Appeals for the Fifth Circuit, which dismissed the petition for lack of jurisdiction on December 17, 2019. *Id.* at ¶¶ 86–87.

On February 3, 2020, Escobar and his wife initiated the provisional waiver process for the second time by submitting a new I-130 Petition for Alien Relative. *Id.* at ¶ 88. Three days later, Escobar submitted his Form I-212 Application for Permission to Reapply for Admission into the United States. *Id.* at ¶ 89.

Escobar and his wife are pursuing the provisional waiver process to legalize his status in the United States prior to pursuing his immediate relative immigrant visa at the U.S. Consulate in Colombia. *Id.* at ¶ 91. Upon approval of the second I-130 Petition, payment of the National Visa Center processing fees, and approval of the I-212 Application, Escobar asserts he will submit a Form I-601A Application for Provisional Unlawful Presence Waiver. *Id.* Escobar also asserts that following this process he will self-deport to attend his immigrant visa interview at the U.S. Consulate in Colombia. *Id.* at ¶ 92.

### 3. **Scheduled Removal**

Back in 2012, Escobar filed a Form I-246 Application for Stay of Deportation with ICE. *Id.* at ¶ 93. ICE approved that Application, stayed Escobar's removal for one year, and enrolled him into the Order of Supervision Program, which required him to periodically report to ICE and granted him work authorization in the United States. *Id.*

In 2019, more than 5 years after ICE's stay of removal expired, Escobar filed another Form I-246 Application for Stay of Deportation. This time, ICE denied the Application and required him to report for an appointment under the Order of Supervision Program, at which time

ICE issued a "Plan of Action for Removal" that required Escobar to depart the United States no later than February 20, 2020. *Id.* at ¶¶ 95–96.

On February 18, 2020, two days before Escobar's scheduled departure, Escobar and the remaining petitioners filed their Petition for Writ of *Habeas Corpus* and Class Action Complaint for APA Judicial Review and their Emergency Motion for Temporary Restraining Order. (*See* D.E. 1, 7.) The following day, this Court denied the emergency motion as to Escobar[2] as untimely because he was scheduled to depart the United States later the same day. (*See* D.E. 8.) The same day, Escobar filed another Form I-246 Application for Stay of Deportation or Removal. (*See* D.E. 28-2 at 1.) On February 21, 2020, ICE approved the Application. *Id.*

### D.     VALDIRENE VASQUEZ

Petitioner Valdirene Vasquez *a/k/a* Valdirene Moeira Da Silva is a native and citizen of Brazil. (D.E. 1 at ¶ 99.) She entered the United States, without inspection, around June 13, 2005 near the Texas-Mexico border. *Id.* at ¶ 100.

#### 1.     Initial Order of Removal

Vasquez subsequently failed to appear for a master calendar hearing at the Houston Immigration Court and was ordered removed *in absentia*. *Id.* at ¶ 101. Vasquez attempted to reopen her immigration proceedings on two occasions, and the last motion to reopen was denied around September 2019. *Id.* at ¶ 102. She appealed the denial to the Board of Immigration Appeals, but her appeal was dismissed after her attorney failed to submit a brief by the required deadline. *Id.* at ¶¶ 102–03.

---

[2] As to the remaining Petitioners with scheduled removal dates, the Court denied the emergency motion without prejudice and with leave to refile after the Complaint was served on the Defendants. (D.E. 8.)

### 2. **Provisional Waiver Process**

The provisional waiver process for Vasquez was initiated by her United States citizen husband, Zachary Vasquez. *Id.* at ¶¶ 105–06. On November 20, 2018, Zachary Vasquez submitted a Form I-130 Petition for Alien Relative to obtain an immigrant visa for his wife. *Id* at ¶ 106. To date, the I-130 Petition remains pending without agency action. *Id.* at ¶ 108. Together, Vasquez and her husband retained separate counsel who, on March 12, 2020, submitted a Form I-212 Application for Permission to Reapply for Admission into the United States. *See id.* at ¶ 109; D.E. 28-3 at 3–312.

Vasquez and her husband are pursuing the provisional waiver process to legalize her status in the United States prior to pursuing his immediate relative immigrant visa at the U.S. Consulate in Brazil. (D.E. 1 at ¶ 110.) Upon approval of the I-130 Petition, payment of the National Visa Center processing fees, and approval of the I-212 Application, Vasquez asserts she will submit a Form I-601A Application for Provisional Unlawful Presence Waiver. *Id.*

### 3. **Scheduled Removal**

After Vasquez's removal order was entered, ICE enrolled her into the Order of Supervision Program, which required her to periodically report to ICE and granted her work authorization in the United States. *Id.* at ¶ 111. On February 3, 2020, Vasquez reported to her scheduled appointment under the Order of Supervision Program, at which time ICE issued a "Plan of Action for Removal" that required Vasquez to depart the United States no later than March 30, 2020. *Id.* at ¶ 113. During the appointment, ICE informed Vasquez that she will be classified as a fugitive subject to detention and force removed from the United States if she fails to voluntarily depart the United States on or before March 30, 2020. *Id.* Vasquez has a final report with ICE set for March 27, 2020. (D.E. 28-3 at 1.)

On March 3, 2020, the Court entered an order temporarily enjoining enforcement of the

removal order for Vasquez until March 30, 2020. (D.E. 20.)

### E. **MARIA REYES**

Petitioner Maria Reyes is a native and citizen on Honduras. (D.E. 1 at ¶ 116.) She entered the United States, without inspection, around June 6, 2016. *Id.* at ¶ 117.

#### 1. **Initial Order of Removal**

On June 2, 2017, the Orlando Immigration Court denied Reyes's Form I-589 Application for Asylum and Withholding of Removal, and ordered Reyes removed to Honduras. *Id.* at ¶ 118. Reyes appealed the decision to the Board of Immigration Appeals, which dismissed the appeal on January 24, 2018. *Id.* at ¶ 119. Sometime during 2019, Reyes filed a motion to reopen with the Board of Immigration Appeals, which was denied on October 21, 2019. *Id.* at ¶ 120.

#### 2. **Provisional Waiver Process**

The provisional waiver process for Reyes was initiated by her United States citizen husband, Michael Lyn. *Id.* at ¶¶ 121–22. On January 29, 2018, Michael Lyn submitted his immediate relative I-130 Petition for Alien Relative to obtain an immigrant visa for his wife. *Id* at ¶ 122. To date, the I-130 Petition remains pending without agency action. *Id.* at ¶ 123. It appears that on March 5, 2020, Reyes and her husband submitted a Form I-212 Application for Permission to Reapply for Admission into the United States. (*See* D.E. 28-4 at 43–503.)

#### 3. **Scheduled Removal**

On December 28, 2018, ICE enrolled Reyes into the Order of Supervision Program, which required her to periodically report to ICE and granted her work authorization in the United States. (D.E. 1 at ¶ 125.) On January 30, 2020, Reyes reported to her scheduled appointment under the Order of Supervision Program, at which time ICE issued a "Plan of Action for Removal" that required Vasquez to depart the United States no later than March 15, 2020. *Id.* at ¶ 127. During the appointment, ICE informed Reyes that she will be classified as a fugitive subject to detention

and force removed from the United States if she fails to voluntarily depart the United States on or before March 15, 2020. *Id.* It appears that Reyes has a final report with ICE set for April 6, 2020. (D.E. 28-4 at 1.)

On March 3, 2020, the Court entered an order temporarily enjoining enforcement of the removal order for Reyes until March 30, 2020. (D.E. 20.)

### F. SUMMARY

Each Petitioner filed both a Form I-130 Petition for Alien Relative and a Form I-212 Application for Permission to Reapply for Admission into the United States After Deportation or Removal. Only Karr's and Cohen's I-130 Petitions have been approved. None of the I-212 Applications have been approved; consequently, none of the Petitioners have filed a Form I-601A Application for Provisional Unlawful Presence Waiver.

## II. DISCUSSION

The Petitioners ask the Court to issue a preliminary injunction to enjoin the Respondents from enforcing valid, outstanding orders of removal for Petitioners Karr, Cohen, Escobar, Vasquez, and Reyes, so that these Petitioners can remain in the United States during pendency of their provisional waiver application process. Before addressing whether the Petitioners can meet their burden to acquire a preliminary injunction, the Court must first determine whether it has jurisdiction to review this case.

### A. JURISDICTION

Federal courts are courts of limited jurisdiction. *See* U.S. CONST. art. III; 28 U.S.C. § 1331; *Keene Corp. v. United States*, 508 U.S. 200, 207–08 (1993). And it is exclusively the power of Congress to restrict the jurisdiction of federal courts to adjudicate certain kinds of cases. *See Keene Corp.,* 508 U.S. at 207. For immigration cases, Congress has restricted (and sometimes even eliminated) the jurisdiction of federal district courts to review immigration-related decisions.

*See, e.g.*, 8 U.S.C. §§ 1252(a)(5), (b)(9), (g).

Despite the "clear Congressional intent to strip district courts of jurisdiction to review removal orders entered by United States Immigration Courts," *Majano Garcia v. Martin*, 379 F. Supp. 3d 1301, 1304 (S.D. Fla. 2018), the Petitioners insist the Court has jurisdiction to decide whether the Petitioners are entitled to a preliminary injunction that enjoins the Respondents from executing valid, outstanding orders of removal. Specifically, the Petitioners argue that the jurisdictional restrictions in Sections 1252(a)(5), (b)(9), and (g) do not preclude the Court from hearing a challenge to ICE's "legal authority to exercise its discretion to remove Petitioners." (D.E. 17 at 20.) The Petitioners also assert that they are not challenging "the exercise of discretion itself," nor do they "dispute the validity of the removal orders themselves." *Id.* at 20, 26.

In Section 1252(g), Congress made clear that federal district courts do not have jurisdiction to review decisions by the Attorney General to execute removal orders against any alien:

> (g) *Exclusive* jurisdiction:
>
> Except as provided in this section and *notwithstanding any other provision of law (statutory or nonstatutory)*, including section 2241 of Title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, *no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to* commence proceedings, adjudicate cases, or *execute removal orders against any alien* under this chapter.

§ 1252(g) (emphases added). Indeed, Congress directed this Section "against a particular evil: attempts to impose judicial constraints upon prosecutorial discretion." *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 485 n.9 (1999).

Here, even though Petitioners Karr, Cohen, Escobar, Vasquez, and Reyes are not "disput[ing] the validity of the removal orders themselves" (D.E. 17 at 26), by asking the Court to preliminarily enjoin the Respondents "from taking any action to detain or deport" them during pendency of their provisional waiver application process, *id.* at 7, they *are* seeking judicial

- 13 -

constraint of the Attorney General's decision to exercise discretion in executing removal orders.

Simply put, this is a claim by aliens "arising from the decision . . . by the Attorney General to . . . execute removal orders" against them. § 1252(g). And "notwithstanding any other provision of law (statutory or nonstatutory) . . . *no court* shall have jurisdiction to hear [this] cause or claim." *Id.* (emphasis added). Therefore, under the plain, unambiguous language of Section 1252(g), the Court does not have jurisdiction to review the Petitioners' claim. *See Majano Garcia*, 379 F. Supp. 3d at 1307 (ruling court was stripped of jurisdiction to hear a claim that filing a Form I-130 Petition conferred a right to stay a valid, outstanding order of removal).[3]

Undeterred, the Petitioners maintain that Section 1252(g) does not prevent the Court from reviewing "the underlying legal bases for those discretionary decisions and actions." (D.E. 17 at 22 (citing *Camarena v. Director*, Case No. 19-13446, Order Staying Removal Pending Appeal (11th Cir. Sept. 23, 2019) (citing *Madu v. U.S. Att'y Gen.*, 470 F. 3d 1362, 1368 (11th Cir. 2006)).) In *Camarena*, a majority panel of the Eleventh Circuit granted a petitioner's motion for stay of removal pending the appeal of a denied petition for writ of *habeas corpus*. The majority panel reasoned that "a challenge to ICE's legal authority to exercise its discretion, not the exercise of discretion itself" is not barred by Section 1252(g). *See Camarena*, Slip. Op. at 9 ("But while § 1252(g) bars us from reviewing these discretionary acts, 'it does not proscribe substantive review

---

[3] This reading is consistent with rulings from district courts across the country. *See Probodanu v. Sessions*, 387 F. Supp. 3d 1031, 1040–43 (C.D. Cal. 2019) (ruling § 1252(g) stripped court of jurisdiction to "review the Government's discretionary decision to execute removal orders" even though alien petitioner started provisional waiver application process and had I-130 Petition approved); *Gomes v. Smith*, 381 F. Supp. 3d 120, 122–24 (D. Mass. 2019) (finding § 1252(g) stripped court of jurisdiction to grant the alien petitioner relief that "emanate[d] from his removal proceedings" even though alien petitioner started provisional waiver application process); *Pinto-Barrera v. Sifuentez*, Case No. 18-CV-00325-DCG, 2018 WL 6027114, *2 (W.D. Tex. Nov. 16, 2018) (ruling § 1252(g) "strip[ped] th[e] Court of jurisdiction" to review alien petitioner's emergency motion for stay of removal even though alien petitioner started provisional waiver application process).

of the underlying legal bases for those discretionary decisions and actions.'") (quoting *Madu*, 470 F.3d at 1368).[4] The Petitioners ask the Court to follow *Camarena* and *Madu*, and to declare there is a jurisdictional basis to review this case. After close review, the Court finds that the Eleventh Circuit's reasoning in *Madu* compels a different result.

It is undisputed here that there are valid, outstanding orders of removal for Petitioners Karr, Cohen, Escobar, Vasquez, and Reyes. (*See* D.E. 17 at 26.) But that was not the case in *Madu*. There, Madu argued "his detention and pending removal [were] unconstitutional because he [was] *not subject to an order of removal*." *Madu*, 470 F.3d at 1366 (emphasis added). Specifically, Madu argued that the underlying basis of his petition was "not a challenge to a final order of deportation or removal but, that Respondent[s] [were] holding him against his constitutional rights under the fictitious pretense that he [was] subject to a final order of deportation." *Id.* at 1365 (emphasis omitted). The nature of Madu's claim is legally significant. The claim explains why his petition for writ of *habeas corpus* only argued that the Immigration and Naturalization Service was holding him "in violation of his constitutional rights of substantive and procedural due process," *id.* at 1365; the claim also explains why the Eleventh Circuit ruled that Section 1252(g) did not preclude the exercise of jurisdiction, *id.* at 1368.

---

[4] In the 2-to-1 decision in *Camarena*, the majority distinguished this Court's ruling in *Majano Garcia*, 379 F. Supp. 3d 1301 on grounds that Majano Garcia filed a *habeas corpus* petition challenging the Board of Immigration Appeals's order that denied his motion to reopen removal proceedings. *See Camarena*, Slip. Op. at 7–8, n.2. But as the Petitioners here acknowledge, Majano Garcia had "also requested that the court [stay] his removal to allow the adjudication of his forms I-130, I-212, and I-601A Application for Provisional Unlawful Presence Waiver." (D.E. 26 at 8.) And in *Majano Garcia*, this Court considered that argument and ultimately ruled that staying the removal "would run contrary to Congress's clear intent to preclude district courts from reviewing removal orders." *See Majano Garcia*, 379 F. Supp. 3d at 1307.

Like Majano Garcia, the Petitioners here also ask the Court to enjoin the government from executing valid, outstanding orders of removal to allow the Petitioners to remain in the United States during the pendency of their provisional waiver application process. (*See* D.E. 17 at 7.) But the law has not changed since *Majano Garcia*. The Court therefore does not have jurisdiction to review the Petitioners' claim.

Interpreting Section 1252(g), the Eleventh Circuit explained in *Madu* that "[w]hile this provision bars courts from reviewing certain exercises of discretion by the attorney general, it does not proscribe substantive review of the underlying legal bases for those discretionary decisions and actions." *Id.* (citation omitted). This is the language that the majority in *Camarena* rested its Section 1252(g) analysis on, and that the Petitioners here ask the Court to follow. Applying this interpretation to the facts in *Madu*, the Eleventh Circuit carefully ruled that Section 1252(g) did *not* apply because the petitioner brought a "constitutional challenge to his detention and impending removal"—rather than a "challenge [to] the INS's exercise of discretion." *Id.*

In short, then, Madu did not challenge the Immigration and Naturalization Service's exercise of discretion because he did not "seek review of an order of removal." *Id.* at 1368; *see also id.* at 1366 (arguing "his detention and pending removal [were] unconstitutional because he [was] *not subject to an order of removal*") (emphasis added). Instead, Madu challenged his detention on constitutional due process grounds. Thus, as the Eleventh Circuit reasoned, Section 1252(g) did not preclude the exercise of jurisdiction to review the constitutional claim. *Id.*

Here, Petitioners Karr, Cohen, Escobar, Vasquez, and Reyes insist that they are challenging "the government's legal authority to exercise . . . discretion [to execute an undisputed, valid, outstanding order of removal] when it would undermine [their] regulatory rights to pursue the provisional waiver process." (D.E. 17 at 25.) This *is* a challenge to the Attorney General's individualized exercise of discretion: they argue that they have a legal right to remain in the United States during pendency of their provisional waiver application process, which, by law, overrides the Attorney General's individualized discretion to execute the undisputed, valid, outstanding orders of removal. So, the legal challenge here is entirely different from Madu's constitutional due process claim that he was being detained under the fictitious pretense of being subject to a final order of removal.

Further distinguishing the Petitioners' claim here from Madu's constitutional due process claim is the fact that the regulatory "right" sought by the Petitioners in this case—the right to remain in the United States during pendency of the provisional waiver application process[5]—is a discretionary form of relief, the initiation of which does not grant any lawful immigration status or period of stay. Federal regulations are clear:

> [T]he decision whether to approve a provisional unlawful presence waiver application is *discretionary*. A *pending or approved* provisional unlawful presence waiver does *not* constitute a *grant* of a *lawful immigration status* or a *period of stay* . . . .

8 C.F.R. § 212.7(e)(2)(i) (effective Aug. 29, 2016) (emphases added). And in the Eleventh Circuit, "an alien has no constitutionally-protected right to discretionary relief or to be eligible for discretionary relief." *Balogun v. U.S. Att'y Gen.*, 304 F.3d 1303, 1311 (11th Cir. 2002) (quoting *Oguejiofor v. Att'y Gen. of U.S.*, 277 F.3d 1305, 1309 (11th Cir. 2002)); *see also Tefel v. Reno*, 180 F.3d 1286, 1300 (11th Cir. 1999) ("[T]his Court has held that the failure to receive discretionary relief in the immigration context does not deprive an alien of a constitutionally protected liberty interest.") (citing *Garcia–Mir v. Meese*, 788 F.2d 1446 (11th Cir. 1986)). Therefore, the Petitioners do not have a constitutional, statutory, or regulatory right to remain in the United States during pendency of their provisional waiver application process.[6]

---

[5] Even if the I-601A Application is approved, the alien still must leave the United States for visa processing at a U.S. Embassy or consulate abroad. *See* 81 Fed. Reg. at 50264, 2016 WL 4037178 (noting that any alien "present in the United States without having been inspected and admitted or paroled are typically ineligible to adjust status in the United States," and so "[t]o obtain [lawful permanent resident] status, such individuals must leave the United States for immigrant visa processing at a U.S. Embassy or consulate abroad").

[6] For this reason, the Petitioners also could not argue that the Court has jurisdiction to consider colorable constitutional and legal challenges to an agency's legal authority notwithstanding unambiguous jurisdiction stripping language. *See Arias v. U.S. Att'y. Gen.*, 482 F.3d 1281, 1284 (11th Cir. 2007) ("A petitioner may not create the jurisdiction that Congress chose to remove simply by cloaking an abuse of discretion argument in constitutional garb.") (quoting *Torres–Aguilar v. INS,* 246 F.3d 1267, 1271 (9th Cir. 2001)).

Because the Petitioners do not have a legal right to remain in the United States, they are balancing their discretionary right to relief against the Attorney General's authority to use discretion in executing valid, outstanding orders of removal. Under the Eleventh Circuit's reasoning in *Madu*, then, the jurisdictional bar of Section 1252(g) applies in this case. *See Madu*, 470 F.3d at 1368 (noting that Section 1252(g) "bars courts from reviewing certain exercises of discretion by the attorney general"). And as explained above, through the plain, unambiguous language of Section 1252(g), Congress stripped this Court of jurisdiction to review the claims here.

### B. **PRELIMINARY INJUNCTION**

Even assuming the Court has jurisdiction, the Petitioners would fail to carry their burden of satisfying the preliminary injunction factors. The Court can issue a preliminary injunction only if the Petitioners can demonstrate: (1) a substantial likelihood of success on the merits; (2) that they will suffer irreparable injury unless the injunction issues; (3) the threatened injury to the Petitioners outweighs whatever damage the proposed injunction may cause the Government; and (4) if issued, the injunction would not be adverse to the public interest. *See Four Seasons Hotels and Resorts, B.V. v. Consorcio Barr, S.A.,* 320 F.3d 1205, 1210 (11th Cir. 2003). Because a preliminary injunction is "an extraordinary and drastic remedy," it should not be granted unless the Petitioners "'clearly carr[y] the burden of persuasion' as to the four prerequisites." *Zardui-Quintana v. Richard*, 768 F.2d 1213, 1216 (11th Cir. 1985) (citation omitted).

First, the Petitioners cannot demonstrate a likelihood of success on the merits. As discussed above, there is no constitutional, statutory, or regulatory right to remain in the United States during pendency of the provisional waiver application process. *See supra*. Second, the Petitioners cannot demonstrate irreparable harm because self-deporting to comply with the valid, outstanding orders of removal will not terminate their provisional waiver application; rather, it only requires them to await a decision while in their home country. *See Barrios v. McAleenan*,

Case No. 19-24407, Transcript, D.E. 12 at 20 (S.D. Fla. Nov. 15, 2019) (finding no irreparable harm because the petitioner did not have "the right to remain in the United States pending his approval" and because he had to "go back to his country of origin even once he [was] approved")). Finally, enforcing the outstanding removal orders for Petitioners Karr, Cohen, Escobar, Vasquez, and Reyes—which the Petitioners do not dispute the legally validity of—furthers the public's "interest in enforcing federal law." *See Majano Garcia*, 379 F. Supp. 3d at 1308.

For these reasons, even if the Court had jurisdiction, the Petitioners would fail to satisfy the preliminary injunction factors.

### III. CONCLUSION

The current regulations governing the provisional waiver process were created to allow certain aliens to remain in the United States while they applied for a provisional unlawful presence waiver. The goal was to reduce the time that United States citizens would be separated from their immediate alien relatives who, under the old system, were required to apply while living outside the United States. The current regulations do not, however, create a regulatory *right* to remain in the United States during pendency of the provisional waiver application process notwithstanding a valid, outstanding order of removal.

The Court is sympathetic to the predicaments, created by federal immigration policy, that face many aliens and their families living in the United States. But the Court's role in this system is a very limited, yet simple one: to review only the legal claims permitted by Congress. And as shown above, through the plain, unambiguous language of Section 1252(g), Congress stripped this Court of jurisdiction to review claims challenging the decision of the Attorney General to execute valid, outstanding orders of removal. Consequently, it can only be

**ADJUDGED** that the Respondents' Motion to Dismiss **(D.E. 24)** is **GRANTED**, and the Petitioners' Motion for a Preliminary Injunction **(D.E. 17)** is **DENIED**. The Petition for Writ of

*Habeas Corpus* and Class Action Complaint for APA Judicial Review **(D.E. 1)** is accordingly **DISMISSED**, and the Petitioners' Motion for Class Certification **(D.E. 14)** is **DENIED AS MOOT**. The Clerk is directed to close the case.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 22nd of March 2020.

*Federico A. Moreno*
FEDERICO A. MORENO
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record